**WILLIAMS & CONNOLLY LLP**
Stephen D. Raber (SBN: 121958)
725 Twelfth Street, N.W.
Washington, DC 20005-5901
Telephone:  (202) 434-5000
E-mail: sraber@wc.com

*Attorneys for Defendants Tyco Fire Products, LP &*
*Chemguard, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| TERESA MAULDIN, TODD SPELLMAN, GARY WEEKLEY, KEVIN BEBEE, DAN STAPP, BOB BACON, JOHN CASTRO, LUIS CHACON, FRANK DIAZ, FELIX DIAZ, PAUL EDEN, JOHN LAURENT, LARRY NOON, ROB PIPER, STEVE PIZZO, MOSES SALAS, MIKE SANCHEZ, ED SOLANO, MARC STELLING, MIKE TALLERICO, MIKE TAPIA, EUNICO TRINIDAD, GEORGE VEGA, WILLIAM STAPLES, BRIDGET TAPIA, VICTORIA BEBEE, and KATHY PIPER,<br><br>                    Plaintiffs,<br><br>v.<br><br>3M COMPANY, E. I. DU PONT DE NEMOURS & CO., THE CHEMOURS COMPANY L.L.C., ARCHROMA U.S., INC., ARKEMA, INC., AGC CHEMICALS AMERICAS, INC., DAIKIN AMERICA, INC., SOLVAY SPECIALTY POLYMERS, USA, L.L.C., JOHNSON CONTROLS, INC., TYCO FIRE PRODUCTS, L.P., NATIONAL FOAM, INC., CHEMGUARD, INC., CARRIER GLOBAL CORPORATION, KIDDE FIREFIGHTING INC., KIDDE-FENWAL, INC., PERIMETER SOLUTIONS, LP, FIRE SERVICE PLUS, INC., BUCKEYE | Case No. 5:20-cv-07212<br><br>(Formerly Santa Clara County Superior Court Case No. 20CV370176)<br><br>**DEFENDANTS TYCO FIRE PRODUCTS, LP AND CHEMGUARD, INC.'S NOTICE OF REMOVAL** |

1

FIRE EQUIPMENT, AMEREX CORPORATION, DYNAX CORPORATION, MSA SAFETY, INC., LION GROUP, INC., L.N. CURTIS & SONS, W. L. GORE & ASSOCIATES, INC., ROYAL TEN CATE US, INC., PBI PERFORMANCE PRODUCTS, INC., ALLSTAR FIRE EQUIPMENT, and DOES 1 through 25,

Defendants.

## NOTICE OF REMOVAL

Defendants Tyco Fire Products LP ("Tyco") and Chemguard, Inc. ("Chemguard"), by and through undersigned counsel, hereby give notice of removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Superior Court of the State of California, County of Santa Clara to the United States District Court for the Northern District of California. As grounds for removal, Tyco and Chemguard state as follows:

## PRELIMINARY STATEMENT

1.    Plaintiffs seek to hold Tyco, Chemguard, and certain other Defendants liable based in part on their alleged conduct in designing, manufacturing, and selling firefighting chemical agents, aqueous film-forming foam ("AFFF"), which were developed for sale to the United States military and others in accordance with the military's rigorous specifications. One of the sites at which at least one Plaintiff, Bob Bacon, was allegedly exposed to AFFF is the Norman Y. Mineta San Jose International Airport (the "Airport"), a "Part 139" civilian airport in San Jose, California that is required by law to stock and use AFFF made to military specifications.[1] Accordingly, Tyco and Chemguard intend to assert the federal "government contractor" defense in response to

---

[1] Based on the face of the Complaint, it appears that other named Plaintiffs may have similarly been exposed to AFFF at the Airport. Twenty-four of the named Plaintiffs are "firefighters who have served the San Jose, Santa Clara, and Gilroy communities and worked in various fire stations and engine companies in the County of Santa Clara for decades." (Compl. ¶ 76). Plaintiffs assert that the San Jose Fire Department is "the emergency service provider for many high-hazard occupancies, including the [Airport]." (Compl. ¶ 78).

2

Plaintiffs' claims.  Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), Tyco and Chemguard are entitled to remove this action in order to have their federal defense adjudicated in a federal forum.  Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed."  *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

### BACKGROUND

2.      This action was filed on September 11, 2020, in the Superior Court of the State of California, County of Santa Clara, bearing Case No. 20CV370176.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 84 and 1441(a) because the Superior Court of the State of California, County of Santa Clara, is located within the Northern District of California.

3.      On September 15, 2020, Tyco was served with the initial Summons and Complaint (Ex. A).  That same day, the Superior Court issued an Order designating the action as complex. (Ex. B).  There have been no further proceedings in this action in the Superior Court of the State of California, County of Santa Clara, and no other process, pleadings, or orders have been served on Tyco or Chemguard.

4.      Tyco and Chemguard are not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiffs' action as a whole under § 1442(a)(1).  *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245 (S.D.N.Y. 1994).

5.      Plaintiffs generally allege that Defendants (including Tyco and Chemguard) have each marketed, developed, distributed, sold, promoted, manufactured, released, or otherwise used per- and polyfluoroalkyl substances (PFAS) in products, including AFFF products used by Plaintiffs during their employment as firefighters, which included in part providing firefighting services to the Airport.  (Compl.  ¶¶ 3, 6, 8, 18, 78, 101, 104).

Case No. 5:20-cv-07212                                                    NOTICE OF REMOVAL

6. Plaintiffs assert claims for strict products liability-design defect and failure to warn (*id.* ¶¶ 180–226), negligence (*id.* ¶¶ 227–246), and loss of consortium (*id.* ¶¶ 247–252). Plaintiffs seek compensatory, economic, punitive, and/or exemplary damages. (*Id.* at 67–68.)

7. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiffs and a copy is being filed with the Clerk of the Superior Court of the State of California, County of Santa Clara.

8. By filing a Notice of Removal in this matter, Tyco and Chemguard do not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Tyco and Chemguard specifically reserve the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

9. Tyco and Chemguard reserve the right to amend or supplement this Notice of Removal.

**REMOVAL IS PROPER UNDER THE FEDERAL
OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1)**

10. Removal here is proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Durham*, 445 F.3d at 1251. *See Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135.

11. Removal rights under the federal officer removal statute, 28 U.S.C. § 1442, are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O.*

4

*Smith Water Prods.*, No. 11 Civ. 5990, 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted).   This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252.  To the contrary, 28 U.S.C. § 1442 as a whole must be "liberally construe[d]" in favor of removal.  *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (alterations in original, internal quotation marks omitted).

12.     All requirements for removal under § 1442(a)(1) are satisfied here.  *See*, *e.g.*, *Ayo v. 3M Co.*, 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in case against Tyco, Chemguard, and other manufacturers of AFFF).  In fact, in cases quite similar to this one, the judge overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has found several times that removal under § 1442 was proper.  *See In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, 2019 WL 2807266, at *2-4 (D.S.C. May 24, 2019) ("MDL Order 1") (removal requirements satisfied because Tyco demonstrated that it manufactured AFFF under the guidance of the U.S. military); Order, *In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2") at 3–5 (removal requirements satisfied where plaintiff's claims based in part on AFFF use at Part 139 airport); Order, *In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3") at 3–6 (same).  Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, is properly removed to federal court.[2]

**A.     MilSpec AFFF**

13.     Since the 1960s, the United States military has used AFFF that meets military specifications ("MilSpec AFFF") on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and

---

[2] Following removal, Tyco and Chemguard intend to designate this action for transfer to the MDL.

Case No. 5:20-cv-07212                                    NOTICE OF REMOVAL

protect property.  Indeed, the United States Naval Research Laboratory developed AFFF in response to deadly, catastrophic fires aboard the aircraft carriers *USS Forrestal* in 1967 *and USS Enterprise* in 1969.[3]  Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[4]

14.     The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command.  The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[5]  All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement.  Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[6]  The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.  After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[7]  Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

15.     From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants"—the class of chemical compounds that

---

[3] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[4] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), http://bit.ly/2mujJds.

[5] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[6] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[7] Dep't of Defense SD-6, at 1.

6

Case No. 5:20-cv-07212                                    NOTICE OF REMOVAL

includes PFOA, and PFOS—the very compounds at issue in the Complaint here. This requirement has been in force for virtually the entire time period at issue in the Complaint. And although in 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short term." PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

16.     So-called "Part 139" airports are those serving scheduled passenger flights by nine passenger (or larger) aircraft or unscheduled passenger flights by 31 passenger (or larger) aircraft. See 14 C.F.R. § 139.1 (2019). The federal government requires Part 139 airports to use MilSpec AFFF. On July 8, 2004, the FAA issued Advisory Circular 150/5210-6D, which stated that "AFFF agents [used by Part 139 airports] must meet the requirements of Mil F 24385F."[8]  Although the preamble indicated that the circular was for guidance only, on February 8, 2006, the FAA issued a CertAlert clarifying that the MilSpec AFFF requirement was, in fact, mandatory and that "[a]ny AFFF purchased after July 1, 2006 by an airport operator certified under Part 139 must meet [Mil-F-24385F]."[9]  The FAA explained:

> There are several reasons for this requirement. First of all, AFFF has to be compatible when mixed. AFFF manufactured by different manufacturers, although meeting the UL 162 standard, may not be compatible. AFFF meeting the Military Specification will always be compatible with other Military Specification AFFF no matter the manufacturer. Second, AFFF meeting the military specification requires less agent than AFFF meeting UL 162 to extinguish the same size fire. Finally, the requirement to use Mil Spec is in concert with the National Fire Protection Association National Fire Code 403, paragraph 5.1.2.1.[10]

17.     On September 1, 2016, the FAA issued a superseding CertAlert, which reiterated that "Airport operators must ensure any AFFF purchased after July 1, 2006, meets Mil-Spec

---

[8] *See* Advisory Circular 150/5210-6D at 4, Chapter 6, https://tinyurl.com/yxpk87ky.
[9] *See* DOT/FAA/TC-14/22, Impact of Alternative Fuels Present in Airports on Aircraft Rescue and Firefighting Response at 25-26 (Aug. 2014), https://tinyurl.com/rt35dgp.
[10] *Id.*

7

standards."[11]  Thus, from July 1, 2006 to present, airport operators holding an FAA Airport Operating Certificate have been required to purchase MilSpec AFFF for use.

18.  Twenty four of the named Plaintiffs are "firefighters who have served the San Jose, Santa Clara, and Gilroy communities and worked in various fire stations and engine companies in the County of Santa Clara for decades."  (Compl. ¶ 76).  Plaintiffs assert that the San Jose Fire Department ("SJFD") is "the emergency service provider for many high-hazard occupancies, including the [Airport]," a "Part 139" civilian airport in San Jose, California that is required by law to stock and use AFFF made to military specifications.  (*Id.* ¶ 78).  Further, Plaintiff Bob Bacon expressly alleges that the Airport is one of the sites at which he was exposed to AFFF.  (*Id.* ¶ 18). The Complaint asserts that Bacon "worked as a firefighter for over 28 years in the City of San Jose Fire Department, primarily serving at SJFD Fire Station 20, at the Norman Y. Mineta San Jose International Airport"; "received specialized training in ARFF [Aircraft Rescue Fire Fighter]"; and "[i]n the course of firefighting training and fire suppression activities . . . routinely used Class B foam."  (*Id.*).  The Complaint also asserts that four of the other named Plaintiffs worked at the SJFD and were trained in ARFF, which on information and belief necessarily involved exposure to AFFF during trainings and other exercises at the Airport.  (*See id.* ¶¶ 14, 15, 27, 32).  On information and belief, the AFFF used by Plaintiffs, including Bob Bacon, at the Airport since at least 2006 has been MilSpec AFFF.

**B.  All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied**

**1.  The "Person" Requirement Is Satisfied**

19.  The first requirement for removal under the federal officer removal statute is satisfied here because Tyco (a limited partnership) and Chemguard (a corporation) are "persons" under the statute.  For purposes of § 1442(a)(1), the term "'person'" includes "'companies, associations, firms, [and] partnerships.'"  *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *see*

---

[11] Federal Aviation Administration, Cert Alert No. 16-05: Update on Mil-Spec Aqueous Film Forming Foam (AFFF) at 2 (Sept. 1, 2016), https://tinyurl.com/ya5pvbkh.

8

*Lombardi v. TriWest Healthcare All. Corp.*, No. CV-08-02381-PHX-FJM, 2009 WL 1212170, at *2 (D. Ariz. May 4, 2009) ("[C]orporate entities . . . are 'persons' within the meaning of the statute."); *Isaacson*, 517 F.3d at 135–36 (holding that a non-natural entity is a "person" for purposes of § 1442(a)(1)).

### 2.    The "Acting Under" Requirement Is Satisfied

20.    The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out, the duties or tasks of a federal officer. *Isaacson*, 517 F.3d at 137 (internal quotation marks omitted). "The words 'acting under' are to be interpreted broadly." *Id.* at 136 (citation omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813.

21.    The requirement is met here because Plaintiffs' claims, at least in part, challenge Tyco's and Chemguard's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[12] Accordingly, the military has long depended upon outside contractors like Tyco and Chemguard to develop and supply AFFF. *See Ayo*, 2018 WL 4781145, at *8–9 (holding that Tyco, Chemguard, and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *see also* MDL Order 1, 2019 WL

---

[12] *Fulfilling the Roosevelts' Vision* at 37.

9

2807266 at *2-4 (finding that the "acting under" requirement was satisfied because Tyco demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2 at 3–5 (same for AFFF used at Part 139 airport); MDL Order 3 at 3–6 (same). If Tyco, Chemguard, and other manufacturers did not provide MilSpec AFFF for use at Part 139 airports, the government would have to manufacture and provide the product itself.

22.    In designing, manufacturing and supplying the MilSpec AFFF products at issue, Tyco and Chemguard acted under the direction and control of one or more federal officers. Specifically, Tyco and Chemguard acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the United States Department of Defense.[13]

### 3.    The Causation Requirement Is Satisfied

23.    The third requirement, that a defendant's actions were taken "under color of federal office . . . has come to be known as the causation requirement." *Isaacson*, 517 F.3d at 137 (alteration, citation, and internal quotation marks omitted). Like the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Id.* Courts "credit Defendants' theory of the case when determining whether [this] causal connection exists." *Id.*[14]

24.    "To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack … occurred *while* Defendants were performing their official duties." *Id.* at 137–38. Here, the Plaintiffs' claims arise at least in part from Tyco's and Chemguard's production and sale of AFFF manufactured to military specifications for use at military bases and Part 139 airfields. Plaintiff alleges that the use of PFAS in AFFF rendered those products defective. Tyco

---

[13] *See* Dep't of Defense, SD-6, at 1.
[14] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990, 2011 WL 5109532, at *5 (S.D.N.Y. Oct. 21, 2011).

and Chemguard contend that the use of such chemicals in MilSpec AFFF was required by military specifications. The conflict is apparent: MilSpec AFFF was developed by Tyco, Chemguard, and other manufacturers to meet specifications established by the Department of Defense. Military installations and Part 139 airports (including the Airport) are required to employ MilSpec AFFF. The design choices Plaintiffs are attempting to impose via state tort law would create a conflict in which Tyco and Chemguard could not comply with both the MilSpec and the purported state-prescribed duty of care. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 509 (1988); *see also Ayo*, 2018 WL 4781145, at \*9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1, 2019 WL 2807266 at \*3 ("Here, [Plaintiff]'s claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards. The Court . . . finds that the causation element of federal officer removal is satisfied here."); MDL Order 2 at 5 (finding the causation element of federal officer removal satisfied where Tyco/Chemguard's AFFF products, "for which the military imposes MilSpec standards," were used at several Part 139 airports); MDL Order 3 at 5–6 (same as to MilSpec AFFF used at a single airport).

### 4.     The "Colorable Federal Defense" Requirement Is Satisfied

25.     The fourth requirement ("colorable federal defense") is satisfied by Tyco's and Chemguard's assertion of the government contractor defense.

26.     At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original, citation omitted). A "defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court.") (citation omitted). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage

11

in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116 (citing *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006)).[15] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

27.    Under the government contractor defense, the defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

28.    Tyco and Chemguard have satisfied these elements for purposes of removal. As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing MilSpec AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Tyco's and Chemguard's products appeared on the DOD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use PFCs, including PFOS and PFOA, in their products."); *see also id.* ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, 2019 WL 2807266 at *3 (finding Tyco demonstrated a colorable defense "where it

---

[15] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (citations omitted)).

Case No. 5:20-cv-07212                                          NOTICE OF REMOVAL

contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); MDL Order 2 at 4 (same, as to Tyco/Chemguard); MDL Order 3 at 5 (same, as to Tyco/Chemguard).

29.    Moreover, the government was adequately informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or health issues.[16] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[17] More recently, in a November 2017 report to Congress, the Department of Defense acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[18] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[19] *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows

[16] *See, e.g.*, EPA, Revised Draft Hazard Assessment of Perfluorooctanoic Acid and its Salts, at 1–6 (Nov. 4, 2002) (excerpt).

[17] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), http://www.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[18] Dep't of Defense, Aqueous Film Forming Foam Report to Congress 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/y5un3zq8.

[19] *Id.* § 6.6 & Tables 1, 3.

13

of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, 2019 WL 2807266 at *3 ("As to whether Tyco adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, Tyco points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

30.    At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co. (In re "Agent Orange" Prod. Liab. Litig.)*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990, 2011 WL 5109532, at *5 (S.D.N.Y. Oct. 21, 2011) ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)).  Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

WHEREFORE, Tyco and Chemguard hereby remove this action from Superior Court of the State of California, County of Santa Clara, to this Court.

14

RESPECTFULLY submitted this 15th day of October, 2020.


By:     */s/*      Stephen D. Raber

**WILLIAMS & CONNOLLY LLP**
Stephen D. Raber (SBN: 121958)
725 Twelfth Street, N.W.
Washington, DC 20005-5901
Telephone:  (202) 434-5000
E-mail: sraber@wc.com


*Counsel for Tyco Fire Products, LP &*
*Chemguard, Inc.*

15

## CERTIFICATE OF SERVICE

I hereby certify that on October 15th, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing.  I further certify that I delivered a copy of the foregoing via First Class United States Mail to the following:

| Party | Address |
|---|---|
| Plaintiffs | ELIZABETH C. PRITZKER<br>JONATHAN K. LEVINE<br>BETHANY L. CARACUZZO<br>HEATHER P. HAGGARTY<br>RICHARD R. SEAL<br>**PRITZKER LEVINE LLP**<br>1900 Powell Street, Suite 450<br>Emeryville, California 94608<br>*Counsel for Plaintiffs* |
| 3M COMPANY | Michael A. Olsen<br>Gary A. Isaac<br>Mayer Brown LLP<br>71 South Wacker Drive<br>Chicago, IL 60606<br>P: (312) 701-7120<br>F: (312) 706-8742<br>molsen@mayerbrown.com<br>*Counsel for Defendant 3M Company* |
| E. I. DU PONT DE NEMOURS *&* CO. | CT Corporation System<br>818 West Seventh St., Suite 930<br>Los Angeles, CA 90017 |
| THE CHEMOURS COMPANY L.L.C. | CT Corporation System<br>818 West Seventh St., Suite 930<br>Los Angeles, CA 90017 |
| ARCHROMA U.S., INC. | CT Corporation System<br>818 West Seventh St., Suite 930<br>Los Angeles, CA 90017 |
| ARKEMA, INC. | 900 First Avenue<br>King of Prussia, PA 19406 |
| AGC CHEMICALS AMERICAS, INC. | CT Corporation System<br>818 West Seventh St., Suite 930<br>Los Angeles, CA 90017 |
| DAIKIN AMERICA, INC. | The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange St.<br>Wilmington, DE 19801 |

16

Case No. 5:20-cv-07212                                                    NOTICE OF REMOVAL

| Party | Address |
|---|---|
| SOLVAY SPECIALTY POLYMERS, USA, L.L.C. | Corporation Service Company<br>251 Little Falls Drive<br>Wilmington, DE 19808 |
| JOHNSON CONTROLS, INC. | CT Corporation System<br>818 West Seventh St., Suite 930<br>Los Angeles, CA 90017 |
| NATIONAL FOAM, INC. | Keith E. Smith, Esq.<br>Greenberg Traurig, LLP<br>1717 Arch St., Suite 400<br>Philadelphia, PA 19103<br>215-988-7843<br>smithkei@gtlaw.com<br>*Counsel for Defendant National Foam, Inc.* |
| CARRIER GLOBAL CORPORATION | CT Corporation System<br>818 West Seventh St., Suite 930<br>Los Angeles, CA 90017 |
| KIDDE FIREFIGHTING INC. | CT Corporation System<br>1515 Market St. #1210<br>Philadelphia, PA 19102 |
| KIDDE-FENWAL, INC. | Jonathan I. Handler<br>jhandler@daypitney.com<br>Day Pitney LLP<br>One International Place<br>Boston, MA 02110<br>T: (617) 345-4600<br>*Counsel for Defendant Kidde-Fenwal, Inc.* |
| PERIMETER SOLUTIONS, LP | CT Corporation System<br>818 West Seventh St., Suite 930<br>Los Angeles, CA 90017 |
| FIRE SERVICE PLUS, INC. | Fire Service Plus, Inc.<br>180 Etowah Trc<br>Fayetteville, GA 30214 |
| BUCKEYE FIRE EQUIPMENT | Michael L. Carpenter<br>Gray, Layton, Kersh, Solomon, Furr & Smith, P.A.<br>516 South New Hope Road<br>Post Office Box 2636<br>Gastonia, NC 28053<br>(704) 865-4400<br>(704) 866-8010 facsimile<br>mcarpenter@gastonlegal.com<br>*Counsel for Defendant Buckeye Fire Equipment Company* |

17

| Party | Address |
|---|---|
| AMEREX CORPORATION | CT Corporation System<br>818 West Seventh St., Suite 930<br>Los Angeles, CA 90017 |
| DYNAX CORPORATION | 103 Fairview Park Dr.<br>Elmsford, NY 10523 |
| MSA SAFETY, INC. | CT Corporation System<br>116 Pine St. #320<br>Harrisburg, PA 17101 |
| LION GROUP, INC. | QI Services, Inc.<br>Federal Reserve Bldg., 4th Fl.<br>150 E. Fourth St.<br>Cincinnati, OH 45202 |
| L.N. CURTIS & SONS | Paul F. Curtis<br>185 Lennon Lake, Suite 110<br>Walnut Creek, CA 94598 |
| W. L. GORE & ASSOCIATES, INC. | CT Corporation System<br>818 West Seventh St., Suite 930<br>Los Angeles, CA 90017 |
| ROYAL TEN CATE US, INC. | The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange St.<br>Wilmington, DE 19801 |
| PBI PERFORMANCE PRODUCTS, INC. | Corporation Service Company<br>251 Little Falls Drive<br>Wilmington, DE 19808 |
| ALLSTAR FIRE EQUIPMENT | Paul M. Weil<br>5810 El Camino Real<br>Carlsbad, CA 92008 |

/s/     Stephen D. Raber

Stephen D. Raber (SBN: 121958)

18